IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **MICHELLA SPOONER,** *as daughter, next best friend, and personal representative of Michael Davis Digel; and on behalf of the wrongful death beneficiaries of Michael Davis Digel* | **PLAINTIFF** |
| v. | Civil No. 1:15cv109-HSO-JCG |
| **PRENTISS G. FLOORE** | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO SPECIFIC ITEMS OF DAMAGES**

BEFORE THE COURT are two motions for partial summary judgment: (1) the Motion [71] for Partial Summary Judgment on the issue of liability filed by Plaintiff Michella Spooner ("Plaintiff"); and (2) the Motion [76] for Partial Summary Judgement as to four specific items of damages filed by Defendant Prentiss G. Floore ("Defendant"). Upon review of the record and relevant legal authority, the Court finds that Plaintiff's Motion [71] for Partial Summary Judgment on the Issue of Liability should be denied because genuine issues of material fact remain on the issue of causation. Defendant's Motion [76] for Partial Summary Judgment will be granted in part as to Plaintiff's claims for hedonic damages and the decedent, Michael Digel's, loss of love, society, and companionship, which are not recoverable in a wrongful death action pursuant to Mississippi Code Annotated Section 11-1-69, and will be denied in all other respects.

I.  BACKGROUND

A.   Factual Background

This case arises out of the death of Plaintiff's decedent, Michael Davis Digel ("Digel"), on April 27, 2014.  That afternoon, Digel was riding a motorized bicycle on U.S. Highway 90 in Jackson County, Mississippi.  Compl. [1], at ¶8.[1]  The weather was clear, and Defendant Prentiss G. Floore ("Defendant") later recalled that it was a nice sunny day.  Dep. Floore [81-1], at 67.  Defendant was traveling behind Digel on a straight section of highway in the right lane as the two crossed a concrete bridge.  *Id.* 67–68.  Defendant testified that Digel was traveling at a very slow speed for the highway, only 10 or 15 miles per hour, and was traveling in the "left/middle" of the lane.  *Id.* at 30.   The speed limit for that section of U.S. Highway 90 was 65 miles per hour.  Uniform Crash Report [72-2], at 4.  State statute sets the minimum speed for motor vehicles on federal highways at 30 miles per hour.  Miss. Code Ann. § 63-3-509.

There was no other traffic on the bridge, so Defendant attempted to pass Digel's bicycle on the left.  Dep. Floore [81-1], at 30–31.  As Defendant's truck passed Digel's bicycle, the vehicles collided.  *Id.* at 29–30.  Although Defendant contends that he cut his truck to the left when he saw the bicycle, Defendant

---

[1] Although the bicycle was equipped with a motor, there is no record evidence as to whether the motor was running prior to the collision.  Dep. Burnett [81-3], at 30; Report Gilbert Rhoades [81-6], at ¶8.

testified that he was unable to avoid the collision in time because Digel was traveling so slowly. *Id.* at 28–32. Digel died from his injuries later that day.

A Mississippi Highway Patrol Officer, Trooper Kevin Burnett ("Trooper Burnett"), responded to the collision. Uniform Crash Report [72-2], at 1. According to Trooper Burnett, when he arrived at the scene Defendant informed him that he had undergone eye surgery approximately two weeks before the incident, did not see Digel, and "ran right into him." Uniform Crash Report [72-2], at 2. Trooper Burnett testified that he was "100 percent positive" that Defendant said he did not see Digel. Dep. Burnett [81-3], at 19.

Defendant contends that he does not remember making that statement to Trooper Burnett, and has testified in his deposition that he did see Digel, as evidenced by the fact that he struck Digel from the side when passing, as opposed to striking Digel head-on. Dep. Floore [81-1], at 57–59, 92 ("If I hadn't seen him I would have run over him, you know. I wouldn't have had him on the side . . . ."). Trooper Burnett's report reflects that the bicycle's initial contact with Defendant's vehicle was on the passenger's side of Defendant's vehicle. Uniform Crash Report [72-2], at 4. Trooper Burnett also testified that if he had seen Digel traveling 15 miles per hour or less in the middle of that particular section of highway, as Defendant claims, Trooper Burnett would have considered it to be a dangerous situation and would have stopped Digel. Dep. Burnett [81-3], at 31–32.

It is undisputed that Defendant underwent lens surgery on his left eye on April 3, 2014. Def.'s Aff. [76-1]. Defendant avers that he was not advised by the

3

doctor who performed the surgery, Dr. Alan Franklin, or any other medical provider, that he should not operate a motor vehicle. *Id.* Moreover, Defendant asserts that he has driven to and from his work for many years, and that his only other motor vehicle accident occurred in the 1970s. *Id.*

Following the accident, Paramedic David Rollins was dispatched to the scene and arrived at 3:52 p.m. Dep. Rollins [81-9], at 10–12. Digel's eyes were open and he was conscious when Rollins arrived, but Digel had a bloody substance coming from his mouth, was speaking in a garbled tone, and was not alert or oriented. *Id.* at 15–16. Digel was transported to the closest appropriate hospital, Singing River Hospital. *Id.* at 22. At 4:10 p.m., Dr. Melissa Costello evaluated Digel and began treatment. Dep. Costello [81-10], at 90. Dr. Costello had passed the site of the collision her way to work at the Hospital, and was able to quickly assess Digel's condition, having observed him on the side of the road before the ambulance arrived. *Id.* at 10–12. After a series of unsuccessful resuscitative efforts, Digel was pronounced dead at 6:40 p.m. *Id.* at 40–41.

B.   Procedural History

On April 1, 2015, Plaintiff initiated this civil action in her capacity as daughter, next best friend, and personal representative of Michael Davis Digel, and on behalf of Digel's wrongful death beneficiaries. Compl. [1], at 1. The Complaint seeks damages for Digel's wrongful death including but not limited to:

    a.   All medical expenses;
    b.   All funeral expenses;

    c.      All damages arising from the physical injuries to the person of Michael Davis Digel;
    d.      Physical and Mental Pain and Suffering and Hedonic damages prior to and up until the time of death;
    e.      The present net cash value of the life expectancy of the deceased, including but not limited to whatever sum Michael Davis Digel might have recovered as the present value of his own life expectancy;
    f.      The children's loss of Love, Society, and Companionship of the deceased;
    g.      The Deceased[']s loss of Love, Society, and Companionship;
    h.      All damages as set out in the Wrongful Death Statute as set out in Section 11-7-13 of Mississippi Code, 1972.

*Id.* at ¶40. Plaintiff also requests an award of punitive damages for Defendant's "willful, wanton, and grossly negligent conduct." *Id.* at ¶41.

Plaintiff filed the instant Motion [71] for Summary Judgment on the Issue of Liability on March 15, 2016, arguing that under the facts of this case Defendant was negligent as a matter of law. *Id.* at 3. Plaintiff further maintains that she is entitled to summary judgment because Defendant acted with reckless disregard by driving with impaired vision. *Id.* Defendant has filed a Response [78] in opposition.

Defendant filed a Motion [76] for Partial Summary Judgment as to four elements of Plaintiff's claimed damages, specifically:

    1)      "[A]ll damages arising from the physical injuries to the person of Michael Davis Digel;"
    2)      Hedonic damages;
    3)      The deceased's loss of love, society, and companionship; and
    4)      Punitive damages.

Def.'s Mot. [76], at 1. Defendant contends (1) that Plaintiff is not entitled to the first three items of damages based on Mississippi's wrongful death statute, and (2) that Plaintiff has not presented evidence of conduct by Defendant that was

sufficiently wanton or reckless to support a claim for punitive damages. *Id.* at 2–3. Plaintiff has filed a Response [81] in opposition, and Defendant has filed a Reply [89].

## II. DISCUSSION

A.   Legal Standard

   1.   Summary Judgment Standard

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014); *see* Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, a court views the evidence and reasonable inferences from the summary judgment record in the light most favorable to the nonmovant. *Minter v. Great Am. Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quotation omitted). Summary judgment is appropriate unless a nonmoving party can produce "'significant evidence demonstrating the existence of a genuine fact

issue.'" *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (quoting *Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984)) (emphasis omitted).

        2.    <u>Wrongful Death Statute, Mississippi Code Annotated § 11-7-13</u>

Wrongful death statutes "create new causes of action on behalf of the statutorily-designated persons in order to compensate them for the death of the decedent," when a defendant's conduct caused the decedent's death. *Phillips ex rel. Phillips v. Monroe Cty., Miss.*, 311 F.3d 369, 374 (5th Cir. 2002). A plaintiff may seek certain categories of enumerated damages in wrongful death litigation pursuant to Mississippi Code Annotated Section 11-7-13, but these damages are not necessarily due to the same claimants. *See Bridges v. Enter. Products Co.*, 551 F. Supp. 2d 549, 557 (S.D. Miss. 2008).

> For instance, the estate is entitled to recover funeral costs and final medical expenses. The beneficiaries are entitled to recover for their respective claims of loss of society and companionship. [And, the] wrongful death beneficiaries are entitled to recover the present net cash value of the decedent's continued existence.

*Long v. McKinney*, 897 So. 2d 160, 169 (Miss. 2004). Section 11-7-13 mandates that there can be only one suit for the benefit of all parties for recovery of these damages. *See id.* at 171–72; *Bridges*, 551 F. Supp. 2d at 558.

Wrongful death plaintiffs may recover "such damages allowable by law as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit." Miss. Code Ann. § 11-7-13. However, pursuant to Mississippi Code Annotated Section 11-1-69, "damages of every kind" does not include damages for

7

loss of enjoyment of life or hedonic damages caused by death. Miss. Code Ann. § 11-7-69(2). The Mississippi Supreme Court has held that wrongful death damages include (1) the present net cash value of the life expectancy of the deceased; (2) the loss of the companionship and society of the decedent; (3) the pain and suffering of the decedent between the time of injury and death; (4) funeral and medical expenses of the decedent; and (5) punitive damages. *Laney v. Vance*, 112 So. 3d 1079, 1081 (Miss. 2013) (citing *McGowan v. Estate of Wright*, 524 So. 2d 308, 311 (Miss. 1998)); *Gatlin v. Methodist Med. Ctr., Inc.*, 772 So. 2d 1023, 1030–31 (Miss. 2000).

B.   Plaintiff's motion for summary judgment will be denied because genuine issues of material fact remain as to the cause of the collision.

Although Defendant has admitted the fact that his vehicle collided with Digel's bicycle, and many of the other circumstances surrounding the accident are undisputed, summary judgment is nevertheless inappropriate in this case because questions of material fact remain regarding causation. First, a question of material fact exists on whether Defendant saw Digel prior to the collision and whether he had an opportunity to avoid the accident. Second, the summary judgment evidence creates a jury question on the degree of Defendant's and Digel's comparative negligence, which this Court is unable to summarily determine as a matter of law on the present record.

1. <u>A genuine issue of material fact exists as to whether Defendant saw Digel before the collision.</u>

The summary judgment record reveals a genuine dispute of material fact as to whether Defendant saw Digel before the collision and whether, if Defendant did in fact see Digel, the collision was caused by Defendant's failure to exercise reasonable care when passing. Trooper Burnett has testified that Defendant told him at the accident scene that he did not see Digel, and "ran right into him." Dep. Burnett [81-3], at 19. Defendant has since testified in his deposition that he did in fact observe Digel and tried to pass his bicycle on the left, which is why the collision was on the right side of Defendant's vehicle. Dep. Floore [81-1], at 57–59, 92. Under Defendant's version of the facts, Digel's slow speed and his traveling too far to the left of his lane made passing more difficult and caused or contributed to the collision. Defendant's statement in his deposition, as compared to Trooper Burnett's recollection of Defendant's statement that he did not see Digel, creates a question of material fact for the jury to resolve.

Plaintiff argues that Defendant was negligent per se for failing to keep a proper lookout, citing *Dennis By & Through Cobb v. Bolden*, 606 So. 2d 111, 113 (Miss. 1992) ("The driver of a car is charged with the duty of keeping a proper lookout and being on alert for vehicles, objects and persons ahead in the highway."). Mem. Supp. Mot. [72], at 11. However, in *Bolden*, the Mississippi Supreme Court held that the plaintiff was not entitled to a directed verdict as to the defendant motorist's liability for striking a four-year-old child with her vehicle, even though

9

the accident "occurred on a clear day, and on a straight street" because "the front of the car did not strike the child . . . she was struck by the side of the vehicle." *Id.* at 114.

Here, Defendant testified that the front of his truck did not make contact with Digel, but instead Digel was struck by the passenger's side mirror.[2] Dep. Floore [81-1], 34. Trooper Burnett's report further reflects that the area of initial contact with Defendant's truck was on the passenger's side near the mirror. Uniform Crash Report [72-2], at 4. Viewing this evidence in the light most favorable to the nonmovant, Defendant here, *see Minter*, 423 F.3d at 465, and following the reasoning in *Bolden*, summary judgment as to liability would be improper.

Plaintiff also argues that Defendant was negligent per se under Mississippi law because in *Reese v. Summers*, 792 So. 2d 992 (Miss. 2001), the Mississippi Supreme Court held that "when two vehicles are traveling in the same direction, the duty of avoiding collision generally rests with the driver of the following vehicle, and that driver is per se negligent if he runs into the leading vehicle absent any emergency or unusual conditions." *Id.* at 996. However, the Court further clarified

---

[2] During Defendant's deposition, Plaintiff's counsel referenced photographs of the damage to Defendant's vehicle, but those photographs have not been submitted to the Court for consideration on summary judgment. Dep. Floore [81-1], at 34–40. In Defendant's deposition, Plaintiff's counsel implies that the pictures depict damage beginning at the truck's front hood, suggesting that Defendant must have hit Digel with the front of the truck. *Id.* at 39. Even in the face of this questioning, Defendant insisted that he did not strike Digel with the front of his truck. *Id.*

that "whether particular circumstances rise to [the] level of emergency or unusual is [a] jury question." *Id.* Because the driver and passenger in the following vehicle testified in *Reese* that the leading vehicle had stopped unexpectedly, the Mississippi Supreme Court held that this unexpected condition created a jury question on liability. *Id.*

Here, a reasonable jury could similarly find that Digel's riding his motorized bicycle on the highway at a slow speed and in the "left/middle" of the lane constituted an unusual or emergency condition, thereby creating a jury question as to Defendant's liability. This conclusion is bolstered by Trooper Burnett's testimony that had he witnessed Digel traveling slowly on that particular stretch of highway, as Defendant described, he would have considered it to be a dangerous situation and would have stopped Digel. Dep. Burnett [81-3], at 31–32.

Plaintiff cites other cases for the proposition that Defendant was negligent as a matter of law, but these decisions further support the conclusion that summary judgment is inappropriate here. Mem. Supp. Mot [72], at 11–12. In *L.A. Wood & Co. v. Taylor*, 154 F.2d 548 (5th Cir. 1946), the issue of liability was submitted to the jury when a vehicle collided with a bicycle while passing. *Id.* at 549. In *Choctaw Maid Farms, Inc. v. Hailey*, 822 So. 2d 911 (Miss. 2002), the Mississippi Supreme Court affirmed the trial court's decision to grant a directed verdict against one motorist on the issue of liability, but the trial court had also granted a comparative negligence instruction regarding any potential liability by the other motorist and submitted the comparative negligence issue to the jury. *Id.* at 914.

Thus, even in a situation where the evidence at trial was ultimately strong enough to support a directed verdict, liability was not determined on summary judgment. *Id.*; *see also Kettle v. Musser's Potato Chips, Inc.*, 162 So. 2d 243, 253 (Miss. 1964) (directing verdict on liability after jury trial and remanding for new trial on damages); *Robertson v. Welch*, 134 So. 2d 491, 494 (Miss. 1961) (same); *Rivers v. Turner*, 78 So. 2d 903, 907 (1955) (remanding for new trial after erroneous instructions when vehicle struck bicyclist from behind).

Based on the present record, Mississippi law seems to indicate that summary judgment would be inappropriate. Because genuine issues of material fact remain as to whether Defendant saw Digel and should have been able to avoid the collision, the Court will deny summary judgment on the issue of Defendant's liability.

   2. <u>The parties' comparative negligence is also a question for the jury.</u>

In moving the Court for summary judgment on Defendant's liability, Plaintiff also contends that there is no evidence of any comparative negligence on the part of Digel. Mem. Supp. Mot. [72], at 16–20. However, the Court finds that based on the present record, a reasonable jury could find that both parties to the collision were negligent. "Under the comparative negligence statute the respective liabilities of the parties [are] issues for the jury, and not the court." *Medley v. Carter*, 234 So. 2d 334, 335 (Miss. 1970). Mississippi is a pure comparative negligence state. Miss. Code Ann. § 11–7–15. When both parties' negligence contributes to the injury, negligence is measured in terms of a percentage and recoverable damages are

reduced in proportion to the negligent party's fault. *Meka v. Grant Plumbing & Air Conditioning Co.*, 67 So. 3d 18, 23 (Miss. Ct. App. 2011).

Plaintiff argues that Defendant was negligent for failing to exercise appropriate care when passing in violation of Mississippi Code Annotated Sections 63-3-609 and 63-3-1309. Mem. Supp. Mot. [72], at 9–10. Defendant counters that Digel was negligent per se for traveling too slowly on a federal highway in violation of Mississippi Code Annotated Sections 63-3-509 and 63-3-207. Resp. [79], at 6. Defendant further maintains that Digel was traveling in the "left/middle" of the lane, rather than "as close as practicable to the right-hand curb or edge of the roadway," as bicyclists are instructed to do by Mississippi Code Annotated Section 63-3-1307.[3]

On the present record, a jury could reasonably conclude that the negligence of Defendant or Digel or both contributed to the collision. Viewing the facts in the light most favorable to the nonmovant, Defendant in this case, the degree of Defendant's and Digel's comparative negligence remains a disputed question of

---

[3] As evidence of the contrary proposition, that Digel was traveling "as close as practicable to the right hand edge of the road," Plaintiff cites the Collision Diagram from Trooper Burnett's report showing the bicycle on the right edge of the lane. *See* Mem. Supp. Mot. [72], at 19 (citing Uniform Crash Report [72-2], at 2). The Court notes that Trooper Burnett did not witness which side of the lane Digel was traveling in because he arrived on the scene after the collision, and it is unclear from what source he would have derived this information or whether the depiction of the bicycle on the right side of the lane was even intentional. Viewing the facts in the light most favorable to Defendant, there is a question of material fact on this issue.

material fact, such that the Court finds it appropriate to deny summary judgment as to liability.

C.  <u>Defendant's motion for summary judgment as to specific items of damages will be granted in part where such damages are prohibited by State law, and denied in all other respects.</u>

Defendant moves the Court for summary judgment only as to four items of damages claimed in the Complaint, which he argues are unavailable as a matter of law.

> 1) "[A]ll damages arising from the physical injuries to the person of Michael Davis Digel;"
> 2) Hedonic damages;
> 3) The deceased's loss of love, society, and companionship; and
> 4) Punitive damages.

Def.'s Mot. [76], at 1.

> 1.  <u>Plaintiff's claim for "all damages arising from physical injury" appears to refer to damages that are recoverable in a wrongful death action.</u>

As to the first challenged item of damages, Plaintiff argues that her claim for "all damages arising from the physical injuries to the person of Michael Davis Digel" merely tracks the plain text of Mississippi's wrongful death statute, Mississippi Code Annotated Section 11-7-13 ("[P]arties suing shall recover such damages allowable by law as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent . . . ."). Damages in a wrongful death action have been held to include: (1) the present net cash value of the life expectancy of the deceased; (2) the loss of the companionship and society of the decedent; (3) the pain and suffering of the decedent between the time of injury

14

and death; (4) funeral and medical expenses of the decedent; and (5) punitive damages. *Laney v. Vance*, 112 So. 3d 1079, 1081 (Miss. 2013) (citing *McGowan v. Estate of Wright*, 524 So. 2d 308, 311 (Miss. 1998)); *Gatlin v. Methodist Med. Ctr., Inc.*, 772 So. 2d 1023, 1030–31 (Miss. 2000).

The Court is unable to determine from Plaintiff's briefing what damages she claims are specifically encompassed by her separate claim to "all damages arising from the physical injuries to the person of Michael Davis Digel" that are not covered by the other, more specific, items of damages listed in the Complaint such as loss of society, medical expenses, funeral expenses, and pain and suffering until the time of death. Resp. [81], at 7–10. In opposing summary judgment on this issue, Plaintiff discusses evidence relevant to the beneficiaries' claims for loss of society, and Digel's pain and suffering from the time of the collision until his death three hours later. *Id.* at 9–10. These are all items of damages allowed by Mississippi's wrongful death statute. *Laney*, 112 So. 3d at 1081.

Defendant argues that he seeks summary judgment on this issue because Plaintiff may recover the five types of damages listed above, but any additional damages that might fall under this generalized claim "are simply not allowable." Reply [89], at 5. However, in arguing against summary judgment on this issue, Plaintiff has not articulated any claims for damages falling outside the five allowable categories under the statute, such that the Court at this juncture cannot decipher an impermissible claim to dismiss on summary judgment. Plaintiff's claim for all damages arising from injuries and losses suffered by Digel prior to his death

15

may proceed to trial to the extent it is encompassed by Mississippi's wrongful death statute and the five categories of damages listed above. Defendant's Motion for Summary Judgment will be denied on this issue, since there is no specific unallowable claim for the Court to dismiss, and Defendant has not carried his summary judgment burden to demonstrate that he is entitled to judgment as a matter of law.

2. <u>Hedonic damages are not recoverable in a wrongful death action.</u>

In her Response [81], Plaintiff has not briefed the issue of hedonic damages, and the Court finds that such damages are clearly disallowed in a wrongful death action pursuant to Mississippi Code Annotated Section 11-1-69. *Laney*, 112 So. 3d at 1081. Defendant's motion for summary judgment on the issue of hedonic damages will be granted as to this claim.

3. <u>Digel's loss of love, society, and companionship is not recoverable in a wrongful death action.</u>

It is not clear if Plaintiff is continuing to claim damages for both (1) the beneficiaries' loss of love, society, and companionship of Digel, and (2) Digel's loss of love, society, and companionship of his beneficiaries. These items of damages are identified separately in Plaintiff's Complaint [1] as items (f) and (g) respectively.[4] Defendant's motion challenges only the second claim, and argues that damages for a

---

[4]   f. The children's loss of Love, Society, and Companionship of the deceased;
g. The Deceased[']s loss of Love, Society, and Companionship;
Compl. [1], at ¶40.

decedent's loss of society are not recoverable in a wrongful death action under Mississippi law pursuant to *Laney*.

Plaintiff has cited no authority for the proposition that Digel's own loss of love, society, and companionship from the time of his injury until his death is recoverable in a wrongful death action. Resp. [81], at 11–12. Instead, Plaintiff references cases, including *Laney*, which confirm that wrongful death beneficiaries are entitled to recover for the loss of the companionship and society of the deceased. Plaintiff further states that she "does not seek anything other than the recognized elements of such damages." *Id.*

To the extent Plaintiff's Complaint [1] raises a distinct claim for Digel's loss of love, society, and companionship under item (g), such a claim will be dismissed, and Defendant's motion will be granted in part in this regard. This dismissal does not impact Digel's beneficiaries' ability to recover damages for their own loss of the companionship and society of the deceased in accordance with *Laney*.

   4.   <u>Punitive damages are recoverable in a wrongful death action, and Plaintiff has submitted credible summary judgment evidence creating a material fact question on her claim for punitive damages.</u>

As to punitive damages, such damages are recoverable pursuant to Mississippi Code Annotated Section 11-1-65 when a defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a). Punitive damages are available in a wrongful death action. *Hailey*, 822 So. 2d at 923–24. "Missisippi law does not favor punitive damages" and the Mississippi

17

Supreme Court has cautioned that such damages "are only appropriate in the most egregious cases so as to discourage similar conduct and should only be awarded in cases where the actions are extreme." *Warren v. Derivaux*, 996 So. 2d 729, 738 (Miss. 2008) (quotation marks and citations omitted). "When deciding whether to submit the issue of punitive damages to a trier of fact, the trial court looks at the totality of the circumstances, as revealed in the record, to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard." *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006).

The record in this case contains sufficient competent summary judgment evidence, at least at this stage of the case, to permit the claim for punitive damages to proceed. Trooper Burnett's report and testimony state that, at the scene of the accident, Defendant informed him that he had recently undergone eye surgery and did not see Digel. Uniform Crash Report [72-2], at 2; Dep. Burnett [81-3], at 19. If Digel's vision was so poor that he could not physically see a bicyclist on a clear day or should not have been driving at all, a reasonable jury could find that he was grossly negligent for continuing to operate a motor vehicle given his admittedly considerable history of vision problems. *Id.* at 78–79.

On the other hand, a reasonable jury might also find that Defendant's purportedly decades-long incident-free driving record before this collision takes his conduct out of the realm of gross negligence. Def.'s Aff. [76-1]. On the present record, a material fact question exists on the availability of punitive damages.

18

Defendant's Motion for Partial Summary Judgment on the issue of punitive damages will be denied.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  For the foregoing reasons,

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [71] for Partial Summary Judgment as to Liability filed by Plaintiff Michella Spooner is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** the Motion [76] for Partial Summary Judgment filed by Defendant Prentiss G. Floore is **GRANTED IN PART** as to Plaintiff's claims for hedonic damages and the decedent, Michael David Digel's, loss of love, society, and companionship, and **DENIED IN PART** in all other respects.  Plaintiff's claims for hedonic damages, *see* Compl. [1], at ¶40(d), and the decedent's loss of love, society, and companionship, *see* Compl. [1], at ¶40(g), are hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 25th day of July, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE